IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 6, 2004 Session

## MARCUS W. KEENER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lawrence County**
**No. 23776    Robert L. Jones, Judge**

_____

**No. M2003-01531-CCA-R3-PC - Filed May 25, 2004**

_____

The Defendant, Marcus W. Keener, petitioned for post-conviction relief from his jury-trial conviction of second degree murder, alleging ineffective assistance of counsel. The trial court denied relief after an evidentiary hearing. The Defendant now appeals. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Marcus W. Keener.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant was convicted by a jury of the second degree murder of Steven Bates, which conviction was affirmed by this Court on direct appeal. See State v. Marcus W. Keener, No. M2000-00177-CCA-R3-CD, 2001 WL 428232 (Tenn. Crim. App., Nashville, April 26, 2001). The Defendant now contends that his trial lawyer was ineffective in failing to adequately investigate his case. Specifically, he complains about his trial lawyer's failure to call as a witness Mr. Stacey Short. A brief review of the facts adduced at trial will be helpful in addressing the Defendant's allegations.

The Defendant and the victim were cousins. At one time, the Defendant had dated the victim's girlfriend, Jennifer Parker. On the night in question, the Defendant was visiting with Ms. Parker and the victim when the Defendant cast aspersions of a sexual nature on Ms. Parker. A fight between the two men erupted. Ms. Parker attempted to break up the fight, and the victim turned on her. The Defendant left on foot; however, his car remained at the victim's residence.

The Defendant testified at trial that, after he had been gone a short time, he decided to return to the victim's home. There, he found the victim smashing out the windows of his car. The Defendant challenged the victim and the victim "jumped" at the Defendant. The Defendant testified at trial that he thought the victim was armed with a pistol. Afraid, the Defendant got his rifle out of his car and shot the victim. The Defendant then fled with the rifle, subsequently throwing it in a creek. At trial, the Defendant's theory of defense was that the shooting was in self-defense and/or resulted from sufficient provocation so as to render the killing no more than voluntary manslaughter.[1]

Mr. Stacey Short did not testify at trial, but did testify at the post-conviction hearing. He explained that he drove over to the victim's house on the night of the shooting and saw the victim arguing with his girlfriend, Jennifer Parker. Not wanting to get involved, he left and returned about forty-five minutes later. Mr. Short pulled into the driveway and saw the victim lying on the ground. The victim was still alive and called to Mr. Short. Mr. Short did not realize that the victim had been shot. Ms. Parker came up to Mr. Short as he sat in his truck and told him "that the law was coming and all kinds of stuff and the best thing [he] could do was leave." Because he had marijuana on his person, Mr. Short decided to leave. As he started leaving, he saw Ms. Parker run over to the victim and begin patting him. Mr. Short testified that he did not know what she was doing, whether she was hitting him or simply trying to get stuff out of his pockets. As he watched, Ms. Parker jumped up and hollered at him to "take the S.O.B. with [him]." Ms. Parker did not tell Mr. Short that the victim had been shot.

Mr. Short testified that the police interviewed him, and he gave them a statement similar to his testimony, but that the Defendant's lawyer never spoke with him.

The Defendant's trial lawyer, Mr. Robert D. Massey, also testified at the post-conviction hearing, and maintained that, in his professional opinion, the Defendant should have been convicted of no more than voluntary manslaughter because the events leading up to the shooting, as well as the history between the Defendant and the victim, pointed to "a heat-of-passion-type crime." He acknowledged that Jennifer Parker's testimony about the events that night was crucial to the State's case. He also acknowledged having spoken with the Defendant about Stacey Short, but did not recall that he ever personally interviewed Mr. Short.

Mr. Massey recalled that Mr. Short's name had been on the State's witness list, but that the State did not call Mr. Short to the witness stand. Mr. Massey recalled needing to decide whether the State's decision not to call Mr. Short was made in an effort to "bait" him into calling Mr. Short himself, such that the State would have the benefit of cross-examination. Mr. Massey decided not to call Mr. Short to the stand. He acknowledged at the post-conviction hearing, however, that Mr. Short's testimony might have been helpful in attacking Jennifer Parker's credibility, and might therefore have bolstered the theory of defense.

---

[1] See Tenn. Code Ann. § 39-13-211(a), defining voluntary manslaughter as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner."

During argument following the hearing, post-conviction counsel for the Defendant argued that Mr. Short's testimony could have raised in the jury's mind the idea that Ms. Parker's actions around the victim were aimed at removing a gun. That is, Mr. Short's testimony would have corroborated the Defendant's trial testimony that he shot the victim because he thought the victim had a gun in his hand.

The trial court considered counsel's argument and rejected it. The court recalled Jennifer Parker's testimony at trial and concluded that "she didn't know any information about the actual shooting or at least she didn't testify about any because she was in the house at that time and didn't see it." The court further stated that, after having observed Mr. Short during the hearing, it saw "nothing . . . that suggests that Mr. Short's testimony if offered at the trial would have made any difference." The court concluded that the Defendant had failed to carry his burden of proving that Mr. Massey had rendered ineffective assistance at the Defendant's trial.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court "must be highly deferential" to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

After having carefully considered the evidence adduced at the post-conviction hearing, as well as significant portions of the proof adduced at the Defendant's trial, we agree with the trial court that Mr. Short's testimony would have made no difference in the outcome of the trial. The Defendant failed to establish that any such alleged sub-par performance by Mr. Massey resulted in any prejudice to his defense. We therefore find no merit in the Defendant's contentions and affirm the judgment of the trial court.

_____

DAVID H. WELLES, JUDGE